UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LESLEE E LEASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-00091-TWP-MPB |
| | ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON**
**APPROPRIATE DISPOSITION OF THE ACTION**

Leslee Leason brought this suit for judicial review of the denial of his application for Supplemental Security Income disability benefits. The district judge referred this Cause to the undersigned magistrate judge for submission of this report and recommended disposition. Order Referring Matter to Magistrate Judge [Docket. No. 18.]

**Standards**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited

1

scope of judicial review derives from the principle that Congress has designated the

Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While

review of the Commissioner's factual findings is deferential, review of her legal conclusions is

*de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505, 404.1566, 416.905, 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1523, 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. §§ 404.1525, 416.925. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. §§ 404.1520, 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the

applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Part A (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

      An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

At step one, the ALJ found that Mr. Leason has not engaged in substantial gainful activity since his application date in January 2013. At step two, the ALJ found that Mr. Leason has the severe impairments of seizure disorder; headaches; hand numbness; borderline intellectual functioning; major depressive disorder, recurrent, moderate, with anxious distress, moderate; psychotic disorder, not otherwise specified; and cannabis abuse and dependence. At step three, the ALJ found that Mr. Leason's impairments, severe and non-severe, singly and in combination, do not meet or medically equal any of the conditions in the listing of impairments.

For steps four and five, the ALJ determined Mr. Leason's residual functional capacity. He found that Mr. Leason retained the capacity for work at all exertional levels, but with the following additional restrictions: (1) simple, unskilled work; (2) away from the general public; (3) only occasional interaction with supervisors and co-workers; (4) frequent, but not constant, handling, fingering, and feeling bilaterally; (5) no exposure to hazardous conditions such as heights or dangerous machinery; and (6) no reading.

At step four, the ALJ found that Mr. Leason had no past relevant work to compare with the defined RFC. At step four, the ALJ relied on the testimony of a vocational expert to find that, given Mr. Leason's age, education, skills, and RFC, there is a significant number of jobs in the national economy that he can perform and, therefore, he is not disabled.

The Commissioner's Appeals Council denied Mr. Leason's request to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner on Mr. Leason's claim and the one that the Court reviews.

## Discussion

**1. Listing 12.05C.**

The criteria to satisfy listing 12.05C, intellectual disability, are: (1) significantly sub-average general intellectual functioning with deficits in adaptive functioning, both of which manifested before age 22; (2) a verbal or full-scale IQ of 60 through 70; and (3) a severe physical or other mental impairment. 20 C.F.R. Part 404, Subpt. P, App. 1, Part A, § 12.05C. There are no disputes that, on testing when he was 35 years old, Mr. Leason had a full-scale IQ of 69; that he has deficits in adaptive functioning; and that he has multiple other impairments, both physical and mental, that are severe. The ALJ determined that Mr. Leason did not satisfy listing 12.05C because he produced his IQ of 69 when he was 35 years old, not before he was 22 years old. (R. 18.) The ALJ did not mention whether there was evidence of adaptive deficits before age 22 and he did not mention any evidence relevant to the presence of sub-average intellectual functioning before age 22.

Satisfaction of listing 12.05C does not require a claimant to show IQ test scores from before age 22. 65 Fed.Reg. 50746, 50772 (Aug. 21, 2000); *Miller v. Colvin*, No. 3:13-cv-380 JD, 2014 WL 4105034 (N.D. Ind., Aug. 19, 2014). The ALJ did not mention any lack of evidence regarding whether Mr. Leason's impairment was manifested before the age of 22. Therefore, the only reason given by the ALJ for finding that listing 12.05C was not satisfied ― the lack of an IQ score of 60 to 70, tested during the developmental period ― was erroneous.

6

The Commissioner argues an additional reason: Mr. Leason did not prove that his impairment began during the developmental period. However, because this is a different reason than the ALJ gave, it cannot be considered by the Court on review. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Even if the Commissioner's response were interpreted as implicitly making a harmless-error argument, it fails. "[A] person's IQ is ordinarily presumed to remain stable over time in the absence of any evidence of a change in his or her intellectual functioning," *Allen v. Colvin*, No. 1:15-cv-317-DKL-WTL, *Entry on Judicial Review*, 2016 WL 1029313, *4 (S.D. Ind., March 15, 2016) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006), and Mr. Leason's mother's third-party report states that he grew up slow in learning and always was a D and F student, (R. 178). On this evidence, the Court cannot conclude that a remand likely will not change the listing 12.05C analysis.

Mr. Leason has shown that the ALJ erred in his step-three analysis.

**2. Concentration, persistence, or pace.**

The ALJ found that Mr. Leason has moderate deficiencies in concentration, persistence, or pace. (R. 16-17, 23.) He stated that he accommodated Mr. Leason's mental impairments, including his concentration, persistence, or pace limitations, by restricting his RFC to work that is simple and unskilled, away from the general public, and involves only occasional interaction with supervisors and co-workers. These restrictions are all that the ALJ gave to the vocational expert in his hypothetical questions; he did not mention to, or otherwise address with, the vocational expert Mr. Leason's concentration, persistence, or pace deficiencies. Mr. Leason argues that the ALJ's failure to specifically include moderate deficiencies in concentration,

7

persistence, or pace in his RFC or his hypothetical questions to the vocational expert violated this Circuit's well-established instructions in *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); and *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). The Court agrees.

The Court of Appeals for the Seventh Circuit has repeatedly declared that a restriction to simple and unskilled work addresses only a claimant's capacity to *learn* a new job, not whether the claimant will be able to attend to a job at a pace and duration that meets the standards of a workplace setting. *Id.* The Court of Appeals has recognized only two exceptions to its rule that an ALJ must advise vocational experts of a claimant's moderate difficulties of concentration, persistence, or pace: first, when it is manifest that an ALJ's alternate phrasing specifically excludes tasks that the claimant cannot perform and, second, when the vocational experts, by listening to the comprehensive testimony at the hearing and/or independently reviewing the record, learns of the deficiencies in concentration, persistence, or pace. *O'Connor-Spinner*, 627 F.3d at 619.

Because the ALJ did not identify the nature of Mr. Leason's deficiencies in concentration, persistence, or pace, the first exception is unavailable: it is not "manifest" to the Court that the ALJ's restrictions eliminate whatever condition(s) or triggers that cause whatever Mr. Leason's concentration, persistence, or pace deficiencies are. There is also no evidence that the vocational examiner either reviewed the record or observed sufficient evidence during the hearing to apprise him of Mr. Leason's deficiencies. The Commissioner's only arguments are conclusory: Mr. Leason failed to cite medical evidence of greater limitations than prescribed by the ALJ; the ALJ properly included only limits supported by the evidence; and that the ALJ

made specific findings regarding Mr. Leason's deficiencies in concentration, persistence, or pace. [Docket No. 16, at p. 10.]

Mr. Leason has shown that the ALJ erroneously failed to account for his moderate deficiencies of concentration, persistence, or pace.

### 3. Dr. Arcenas's findings of fine-finger manipulation limitations.

Rey Arcenas, M.D., performed a physical examination of Mr. Leason for the state agency. His narrative findings and check-boxes in the "Fine Finger Skills" section of his report are ambiguous. (R. 324.) For example, for the tasks of picking up a coin, buttoning a shirt, using a zipper, tying shoes, and picking up keys, Dr. Arcenas marked the "no" boxes (of "yes" and "no" choices) with the explanation "Hands are clumsy". (R. 324.) There are no instructions on the form that clarify that a "no" means complete inability to perform the subject tasks, although the yes/no options would indicate such a finding. On the other hand, Dr. Arcenas's preceded his check-box marks with the statements "Pt had a hard time picking up coins, he kept dropping them. Pt had difficulty buttoning his shirt," which might suggest only difficulty but not a complete inability. *Id*. The ALJ found that Dr. Arcenas found that Mr. Leason was not entirely unable to perform the identified manipulations and, therefore, did not include the RFC limitations that such an inability would dictate. The Court finds that the meaning of Dr. Arcenas's findings are ambiguous and the ALJ should have sought clarification.

On remand, the ALJ should obtain such clarification and reconsider his RFC definition accordingly.

**4. Selective consideration of records from Vocational Rehabilitation.**

Mr. Leason argues that the ALJ erred by discussing only the evidence from Vocational Rehabilitation that supported his finding of no disability and ignoring the contrary evidence in Vocational Rehabilitation's records. However, an ALJ need not discuss every piece of evidence in a record or all content of of a piece of evidence. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). He must sufficiently explain his reasoning so that the Court can trace the path of his reasoning and discern a logical connection between the evidence and his findings and conclusions. While the ALJ did not mention the bits from Vocational Rehabilitation's records that Mr. Leason cites, it is evident to the Court that the ALJ did consider all of its records. Further, Mr. Leason has not shown that the evidence that the unmentioned items provide of his impairments and their severity and limiting effects are not adequately reflected in the other record items that the ALJ specifically cited, mentioned, and discussed.

Mr. Leason has not shown that the ALJ erred.

**5. Third-party report by Mr. Leason's mother.**

Mr. Leason argues that, although the ALJ credited some of his mother's report of his functional limitations regarding the use of his hands, concentration, and memory, the ALJ failed to include them in his RFC definition or the hypothetical questions to the vocational expert. Therefore, he argues, it is not clear how the ALJ's restrictions to simple, unskilled work and frequent, but not constant, handling, fingering, and feeling bilaterally fully account for the limitations that the ALJ credited. It is evident that the ALJ considered the third-party report and credited some of its observed limitations to an extent. The error in the ALJ's limitation to simple, unskilled work has been noted above and, to the extent that this limitation is meant to

incorporate some of the third-party report's observations, the connection is not evident to the Court and must be further explained on remand. The ALJ also should reconsider on remand and articulate the connections between the other credited limitations and the restrictions included in his RFC definition.

## Conclusion

The ALJ's decision contains errors as identified above. The Commissioner's denial should be reversed and Mr. Leason's claim remanded for reconsideration consistent with the rulings made herein.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**SO RECOMMENDED** this 12th day of February, 2018.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.