UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LESLEE E. LEASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-00091-TWP-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION AND REMAND**

Plaintiff Leslee E. Leason ("Leason"), appeals the Administrative Law Judge's decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Pursuant to 28 U.S.C § 636, the Court referred the matter to the Magistrate Judge (Filing No. 18), who submitted his Report and Recommendation on February 12, 2018, recommending that the decision of the Commissioner be reversed and remanded for further consideration (Filing No. 19 at 12). The Commissioner timely filed an Objection to the Magistrate Judge's Report and Recommendation (Filing No. 20). For the reasons set forth below, the Court **OVERRULES** two of the Commissioner's Objections, **ADOPTS** the Report and Recommendation in part, and **REMANDS** the decision of the Commissioner for further consideration.

## I. BACKGROUND

Elaboration of the procedural and factual background is unnecessary as the parties and the Magistrate Judge have sufficiently detailed the background in the briefs and the Report and Recommendation. The Court mentions only the essential facts in this entry.

Leason was born in July 1978 and was 34 years old at the time he filed for disability in January 2013. (Filing No. 13-2 at 27.) Leason has a GED, *Id.* at 43, but has never worked full-time. *Id.* at 40, 43. He worked periodically between 1995 and 2008, and for a brief period again in 2014. (Filing No. 13-5 at 11–20.) He has not held employment since. He alleges disability based on seizures, headaches and mental impairments.

In September 2010, Leason established care with Open Door Health Center ("Open Door"). From that time until his official diagnosis of epilepsy by neurologist Dr. Ryan Johnston, Leason experienced ongoing seizure symptoms.[1] (*See* Filing No. 15 at 7-8.) After several intervening visits to Open Door, Leason visited a neurologist in October 2012, which resulted in diagnoses of epilepsy, migraines, and cognitive impairment. *Id.* On later visits to Open Door, Leason met repeatedly with psychologist Mary Jo Roseberry. Dr. Roseberry notes that Leason "seems to have some strange ideas about what is happening to him" and that his judgment and insight were "minimal" (Filing No. 15 at 9). On a memory test, Leason struggled. Leason's activities of daily living and his ability to work have been affected by his various physical and mental health conditions.

On January 20, 2009, Leason filed a Title II application for disability insurance benefits. (Filing No. 13-2 at 13.) On January 23, 2009, Leason filed an application for supplemental security income. Both applications were initially denied on April 14, 2009, and affirmed by the Appeals Council on December 10, 2012. *Id.*

On January 4, 2013, Leason filed an application for supplemental security income, alleging a disability onset beginning November 21, 2008. Psychologist Glen Davidson, Jr., Ph.D., evaluated Leason on January 29, 2013, at the request of the Disability Determination Bureau. Dr.

---

[1] Leason claimed to have seizures, but no conclusive evidence of this was ever found. (Filing No. 7.)

Davidson wrote that Leason seemed capable of understanding what was asked of him but was viewed as being uncooperative. There were concerns that he was high or intoxicated and Dr. Davidson had concerns about reliability, validity, exaggeration, and malingering.

Leason's claim was initially denied on May 15, 2013, and again upon reconsideration on December 10, 2013. *Id.* Administrative Law Judge Dennis Lyndell Pickett (the "ALJ") held a video hearing on May 19, 2015. The ALJ denied Leason's application on June 19, 2015, and the Appeals Council denied his request for review on November 8, 2016 (Filing No. 13-2 at 2).

## II. LEGAL STANDARD

When the Court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision, and while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, 2013 U.S. Dist. LEXIS 141893, at *3 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)).

### III. DISCUSSION

In his appeal of the ALJ's decision, Leason advanced five primary arguments: (1) the ALJ improperly determined Leason did not meet listing 12.05(C); (2) the ALJ neglected to include Leason's limitations of concentration, persistence, and pace in hypothetical questions posed to the vocational expert ("VE"); (3) the ALJ improperly evaluated a consultative opinion regarding Leason's abilities to manipulate with his hands; (4) the ALJ selectively reviewed evidence from Vocational Rehabilitation ("VR"); and (5) the ALJ did not properly include information from an accepted third-party statement in his hypothetical question posed to the VE. (*See* Filing No. 15 at 2.) The Magistrate Judge concluded that remand was warranted in Leason's favor on all of his contentions except for Leason's argument that the ALJ selectively reviewed evidence from VR. (Filing No. 19 at 10.) The Commissioner objected to all of the ALJ's findings except for the finding that was in the Commissioner's favor. (*See* Filing No. 20.) After reviewing the Magistrate Judge's decision, the Court finds no reversible error on the basis of any of the Commissioner's objections. The Court addresses each argument in turn.

A.  **Listing 12.05(C)**

Listing 12.05, which covers intellectual disabilities, provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.[2]

Listing 12.05. Thus, in order for an individual to meet any listing under 12.05, he or she must demonstrate subaverage general intellectual functioning, have deficits in adaptive functioning that first manifested before the age of 22, and meet the requirements of one of four subsections. Subsection (C) specifically requires a claimant to have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function". Thus, as the Magistrate Judge explained, "[t]he criteria to satisfy listing 12.05C, intellectual disability, are (1) significantly sub-average general intellectual functioning with deficits in adaptive functioning, both of which manifested before age 22; (2) a verbal or full-scale IQ of 60 through 70, and (3) a severe physical or other mental impairment."

Leason objected to the ALJ's opinion in this case, which acknowledged his full-scale IQ score of 69 but remarked that "the claimant was 35 years old at the time of this testing so he is unable to meet the criteria of 12.05C[.]" (Filing No. 13-2 at 19.) In response, the Magistrate Judge noted that "[s]atisfaction of listing 12.05C does not require a claimant to show IQ test scores from before age 22" and that "[t]he ALJ did not mention any lack of evidence regarding whether Mr.

---

[2] This Court applies the regulations in effect at the time the ALJ rendered his decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016). While the Commission revised the regulations in September 2016 and altered the subsections of 12.05, this Court considers the rule as it existed in June 2015.

Leason's impairment was manifested before the age of 22." (Filing No. 19 at 6.) For this reason, the Magistrate Judge recommended that Leason's claim be remanded for reconsideration.

The Commissioner objects to the Magistrate Judge's Report and Recommendation on this finding, asserting the ALJ was correct to assess Leason's age at the time of testing. (Filing No. 20 at 2.) The Commissioner also remarked that, in addition to Leason's failure to demonstrate significantly subaverage general intellectual functioning with deficits in adaptive function manifested before Leason turned 22, Leason "did not furnish evidence" to satisfy 12.05(C)'s other two criteria: (1) a valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* As a result, the Commissioner implies that any error here was harmless in that Leason would not have met listing 12.05(C) anyway, notwithstanding the question regarding the date of Leason's IQ test.

A review of the ALJ's decision and the Magistrate Judge's Report and Recommendation reveals that the Magistrate Judge correctly assessed the ALJ's decision. Regarding Leason's age at the time of his IQ test, the Magistrate Judge rightly determined that the timing of an IQ test does not preclude a claimant from demonstrating that the onset of the impairment occurred before age 22. In *Guzman v. Bowen*, the Seventh Circuit acknowledged that IQ scores represent a "lifelong condition" and that "there may be many reasons that an individual had not taken an IQ test at an earlier point in his life and . . . this fact should not preclude a finding of earlier retardation." 801 F.2d 273, 275 (7th Cir. 1986) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985)). As a result, there exists a "presumption that IQ remains relatively constant throughout life and thus IQ tests performed after the claimant is 22 can be used to show a claimant's IQ during the manifestation period." *Miller v. Colvin*, No. 3:13–CV–380, 2014 WL 4105034, at *12 (N.D. Ind.

Aug. 19, 2014); *see also Roderer v. Sullivan*, 908 F.2d 975 (7th Cir. 1990) (finding that claimant's low IQ was manifested before age 22, despite IQ test's administration 37 years after claimant's 22nd birthday).

The Commissioner's second argument fails on factual grounds. The ALJ acknowledged Leason's full-scale IQ qualifying score of 69 in his discussion of the issue of the IQ test's timing. ([Filing No. 13-2 at 9](#).) Additionally, the ALJ determined that Leason had several severe impairments, including "seizure disorder, headaches, hand numbness, borderline intellectual functioning, major depressive disorder, recurrent, moderate with anxious distress, moderate, psychotic disorder not otherwise specified, and cannabis abuse and dependence." ([Filing No. 13-2 at 15](#).)

Because the ALJ incorrectly analyzed the date of Leason's IQ test when determining whether Leason's impairments met or equaled Listing 12.05(C), the Court adopts the Magistrate Judge's recommendation that remand is necessary.

B.  **Concentration, Persistence and Pace Limitations in Hypothetical Questions**

Courts have generally required an ALJ to disclose to a VE the totality of a claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). "Among the limitations the VE must consider are deficiencies of concentration, persistence and pace." *Id.* While the specific term "concentration, persistence and pace" need not necessarily be included in the ALJ's hypothetical, the limitations themselves must be conveyed in some way—either if "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform" or if the ALJ knew that the VE independently reviewed the record. *Id*.

Leason's second objection to the ALJ's opinion stems from the ALJ's hypotheticals for the VE, which Leason claims did not account for his limitations in concentration, persistence and pace. (Filing No. 15 at 25–29.) The Magistrate Judge agreed, stating that "it is not 'manifest' . . . that the ALJ's restrictions eliminate whatever condition(s) or triggers that cause whatever Mr. Leason's concentration, persistence, or pace deficiencies are" and that there exists "no evidence that the vocational examiner either reviewed the record or observed sufficient evidence during the hearing to apprise him of Mr. Leason's deficiencies." (Filing No. 19 at 8.)

The Commissioner objected to the Magistrate Judge's Report and Recommendation, stating that the "ALJ properly included only those limitations supported by the evidence" and that Leason "provided no citations to medical evidence in the record to additional mental work-related limitations that the ALJ did not include in the RFC finding." (Filing No. 20 at 3.) A remand on these grounds, according to the Commissioner, "would be based on mere speculation." *Id*.

Upon review of both the ALJ's decision and the Report and Recommendation, the Court finds the Magistrate Judge correctly evaluated the circumstances. In his opinion, the ALJ determined that Leason had moderate difficulties in concentration, persistence and pace. (Filing No. 13-2 at 17.) The ALJ cited Leason's psychological consultative examination, where Leason "appeared uncooperative and intoxicated, admitted to cannabis abuse, and demonstrated difficulty with long-term memory, comparative and abstract thinking, and serial 7's." (Filing No. 13-2 at 17.) The ALJ also cited Leason's reports of problems with inattention, concentration, short-term memory, and managing stress, anger, and changes in routine. *Id*. While the ALJ does appear to question Leason's credibility in his self-reported matters, the ALJ nonetheless concludes that "the claimant is moderately limited in the area of concentration, persistence or pace." *Id*. at 18.

These moderate limitations, however, were not disclosed by the hypothetical questions posed to the VE. The ALJ asked the VE if any jobs existed for a person who "had the residual functional capacity to perform simple, unskilled work, away from the general public, that would have only occasional interaction with supervisors and coworkers, [and] no exertional limitations." ([Filing No. 13-2 at 64](Filing No. 13-2 at 64).) A second hypothetical kept the limitations of the first but added "frequent not constant handling, fingering and feeling bilaterally, no exposure to hazardous conditions such as heights or dangerous machinery, and no reading". *Id.* at 66.

The Commissioner's argument fails because the ALJ himself determined—citing underlying evidence—that Leason experienced moderate limitations of concentration, persistence, and pace. ([Filing No. 13-2 at 24](Filing No. 13-2 at 24).) It follows that the ALJ did not, as the Commissioner argues, include "only those limitations supported by evidence" while forming the hypothetical questions for the VE. Leason did not need to provide citations to medical evidence in the record to demonstrate his limitations; the ALJ himself already acknowledged them. The problem arose when the ALJ failed to incorporate them in his questions to the VE, as required by *O'Connor-Spinner*.

## C. Consultative Opinion Evaluation

An ALJ's findings of fact are conclusive and must be upheld here if substantial evidence exists to support them and no error of law occurred. *Dixon*, 270 F.3d at 1176. If a reasonable mind might accept evidence as adequate to support a conclusion, such evidence can be considered substantial. *Id.* If substantial evidence exists, the Court may not reweigh it or substitute its own judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

After reviewing the report of Dr. Rey Arcenas ("Dr. Arcenas"), who physically examined Leason in April 2013, the ALJ noted that while Leason "demonstrated poor fine motor movement

and slowness on finger tasks during his consultative examination, Dr. Arcenas did not indicate that the claimant was unable to perform any task involving his hands during the objective examination." ([Filing No. 13-2 at 21.](#)) The ALJ based this conclusion in part on Leason's "reported difficulty with handling and fingering in that he had a hard time picking up and holding coins, buttoning his shirt, using a zipper, tying his shoes, and picking up his keys". ([Filing No. 13-2 at 21.](#)) The task list discussed by the ALJ corresponds to Dr. Arcenas's report, which includes the same task list with accompanying "Yes" and "No" check boxes. ([Filing No. 13-8 at 30.](#)) For the tasks the ALJ listed, Dr. Arcenas had marked the "No" boxes. Above the entire task list, Dr. Arcenas noted, "Pt had a hard time picking up coins, he kept dropping them. Pt had difficulty buttoning his shirt." *Id.*

Leason objected to the ALJ's decision on the grounds that Dr. Arcenas's report was ambiguous and therefore the ALJ "failed to build a logical bridge between the evidence and his conclusions." ([Filing No. 15 at 33.](#)) The reasonable mind, however, might accept the inherent limitations of "Yes" and "No" checkboxes and look to any qualifying description for further guidance. The ALJ therefore relied on substantial evidence when he concluded that Leason "had a hard time" with certain handling tasks but was not entirely unable to perform them. Because the ALJ relied on substantial evidence, the Court will not reweigh it, and the Commissioner's objection here is sustained.

**D.    Selective Review of VR Evidence**

Leason initially argued that the ALJ, when faced with two contrary expert opinions, erred by giving more weight to one "without provid[ing] any logical explanation" and he "could have just as easily said that he gave more weight" to the other. ([Filing No. 15 at 31.](#)) The Magistrate Judge found no error, however, in that "an ALJ need not discuss every piece of evidence in a

10

record or all content of a piece of evidence." *Id*. In reply to the Magistrate Judge's report, Leason withdrew his objection to the ALJ's decision on these grounds. The Court therefore adopts the Magistrate's recommendation and declines to remand on this issue.

### E. **Third-Party Statements in Hypothetical Questions**

As discussed above, the hypothetical questions an ALJ poses to a VE must incorporate all of a claimant's known limitations. *O'Connor-Spinner*, 627 F.3d at 619.

Leason objected to the ALJ's decision for a fifth reason, arguing that the ALJ erred by accepting a third-party statement by Leason's mother ("Mitchell") but failing to incorporate the limitations she described in hypothetical questions posed to the VE. (Filing No. 15 at 36.) Leason argues that "[a]lthough the ALJ accepted Mitchell's statements about the use of his hands, his lack of attention and concentration, and his problems with memory the ALJ failed to include in the RFC assessment or in the hypothetical questions to the VE the limitations described by Mitchell." *Id.*

The ALJ, however, does make clear that he finds only selective elements of Mitchell's statement credible. He notes that he "has incorporated the credible portions of Ms. Mitchell's third-party function report by limiting the claimant to simple, unskilled work that involves frequent, but not constant, handling, fingering, and feeling bilaterally." (Filing No. 13-2 at 26.) This sentence clarifies the ALJ's credibility determination, as it provides that the ALJ did not find credible any substance of Mitchell's statement that was not incorporated into the residual functional capacity and subsequent hypothetical questions. The Court will only question an ALJ's credibility determination "only if the claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). No claim has been made that the ALJ's credibility determination was patently wrong here, so the Commissioner's objection is sustained, and remand is not warranted on this issue.

## IV. CONCLUSION

For the reasons set forth above, the Magistrate Judge's Report and Recommendation is **ADOPTED in part** (Filing No. 19). The final decision of the Commissioner is **REMANDED** for further proceedings as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/29/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com